IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONEGO BIO, INC.,

Plaintiff,

v.

CLARA FOODS CO. d/b/a THE EVERY COMPANY,

Defendant.

OPINION and ORDER

25-cv-761-jdp

---

The focus of this lawsuit is U.S. Patent No. 12,096,784, which discloses a recombinant protein that is a substitute for natural egg-white protein. The patent is owned by Clara Foods Co., which does business under the name of The Every Company. The parties refer to the defendant as Every, so the court will do the same.

Plaintiff Onego Bio, Inc. contends that Every is "attempt[ing] to enforce" the '784 patent against Onego, so Onego is seeking a declaration that it does not infringe the '784 patent and that the patent is invalid. Onego also contends that Every is making false claims about the similarities between its products and the protein found naturally in eggs. Onego asserts claims under the Patent Act and the Lanham Act.

Every moves to dismiss Onego's claims on multiple grounds. Every's broadest contentions relate to the forum. Specifically, Every says that there is no basis for exercising personal jurisdiction over Every in Wisconsin and that venue is improper in the Western District of Wisconsin. Every also contends that declaratory relief is premature on the patent claims and that none of Onego's claims are supported by plausible allegations.

The court will grant the motion to dismiss for lack of personal jurisdiction. Neither party is incorporated in Wisconsin or has a place of business in the state. The only potential

contacts that Onego alleges between Every and Wisconsin are some lobbying efforts and possibly some indirect sales of Every's products. But Onego has not identified any connection between those contacts and any of its claims.

Three other motions are also before the court: (1) Onego's motion to file a sur-reply brief in opposition to the motion to dismiss, Dkt. 64; (2) Every's motion to strike the sur-reply brief, Dkt. 68; and (3) Every's motion to unseal exhibits filed with Onego's sur-reply brief, Dkt. 69. The court will grant the motion to file a sur-reply and deny the motion to strike the sur-reply because the arguments and information in the sur-reply brief do not change the outcome of the motion to dismiss. The court will deny the motion to unseal as moot. Restrictions on what information can remain confidential apply primarily to matters that inform the court's decision. *See City of Greenville, Ill. v. Syngenta Crop Prot., LLC,* 764 F.3d 695, 697 (7th Cir. 2014). The court did not need to consider the documents at issue, so they may remain sealed.

BACKGROUND

The following allegations are taken from the complaint and accepted as true for the purpose of the motion to dismiss. The court will provide additional facts as they become relevant to the analysis.

Both Onego and Every are biotechnology companies that specialize in the production of animal-free egg proteins through precision fermentation. Onego uses the fungus *Trichoderma reesei* to make its proteins; Every uses the yeast strain *Pichia pastoris*.

In 2025, the two companies discussed potential collaboration, including cross-license agreements and a merger. These discussions failed, and this lawsuit followed. At the same time

Onego filed this lawsuit, it filed a lawsuit asserting the same claims against Every in the District of Delaware.

ANALYSIS

**A. Overview of the issues**

Every seeks dismissal of the complaint on the following grounds:

1. Every does not have minimum contacts with Wisconsin for the purpose of exercising personal jurisdiction over Every under the doctrines of either general jurisdiction or specific jurisdiction.

2. Venue is not proper in the Western District of Wisconsin.

3. There is no case or controversy with respect to Onego's requested declaratory relief for noninfringement and invalidity because Every has not done anything to suggest that it may sue Every for infringement.[1]

4. Onego has not stated a plausible claim for invalidity or noninfringement of the '784 patent or for false advertising under the Lanham Act.

The court cannot consider the merits of a claim without first resolving jurisdictional questions. *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007). But there is no hierarchy of threshold issues; the court can decide those in any order. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Every's arguments regarding personal jurisdiction potentially resolve all the claims, so the court will focus on those first.

---

[1] In the Delaware case, Every also contends that there is no case or controversy on the patent claims because Onego does not yet make or sell any products that could infringe the '784 patent. For reasons it does not explain, Every does not make the same argument in this case. But the court is dismissing the case on other grounds, so the court need not request clarification on that issue.

**B.  Personal jurisdiction**

In a case like this one in which national service is not authorized, a federal district court cannot exercise personal jurisdiction over a defendant unless the requirements of both the Due Process Clause and state law are satisfied. *See* Fed. R. Civ. P. 4(k). The parties discuss the Due Process Clause only, so the court will do the same. *See Carrington v. Experian Holdings, Inc.,* 469 F. Supp. 3d 891, 895 (W.D. Wis. 2020) (defendant waives contention that state law doesn't authorize exercise of personal jurisdiction by failing to raise the issue).

The Supreme Court has identified two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 415 nn. 8, 9, 10 (1984). In this case, only specific jurisdiction is at issue; Onego does not contend that the court can exercise general jurisdiction over Every.

The law governing the specific jurisdiction analysis is contingent on the particular claim. Federal Circuit law governs questions of personal jurisdiction over patent claims, and regional circuit law governs the false advertising claim. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1358 (Fed. Cir. 1998); *Taurus IP, LLC v. DaimlerChrysler Corp.,* 726 F.3d 1306, 1336 (Fed. Cir. 2013). But the two circuits apply the same general test. First, it is the plaintiff's burden to show two things: (1) the defendant purposefully directed its activities at residents of the forum; and (2) the claim relates to the defendant's activities within the forum. *B.D. by & through Myer v. Samsung SDI Co.,* 91 F.4th 856, 860–61 (7th Cir. 2024); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.,* 890 F.3d 995, 1000 (Fed. Cir. 2018). Second, if the plaintiff makes that showing, the burden shifts to the defendant to show that an exercise of jurisdiction would be unfair for other reasons. *Id.*

The court must accept as true all plausible allegations in the complaint unless they are refuted by evidence in the record. *M-I Drilling Fluids*, 890 F.3d at 999; *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392–93 (7th Cir. 2020). All genuine factual disputes must be resolved in the plaintiff's favor. *See M-I Drilling Fluids*, 890 F.3d at 999; *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

In this case, Onego does not allege that Every is incorporated in Wisconsin, has its principal place of business here, or has any physical presence here. Rather, both companies are incorporated in Delaware and have their principal place of business in California. Onego also does not allege that Every has any financial assets in Wisconsin or that it advertises its products here. Instead, Onego contends that Every has three types of contacts with Wisconsin that collectively satisfy due process:

- implicit threats to sue Onego for infringement
- sales of its products in Wisconsin
- lobbying of United States senators in Wisconsin.

Whether a particular contact "relates to" a claim may vary based on the claim, so the court will analyze the patent claims and false advertising claims separately.

### 1. Patent claims

Onego alleges in its complaint that Every has made "attempts to enforce the '784 patent and to demand unwarranted patent licensing fees from Onego." Dkt. 7, ¶ 2. Allegations of infringement against an entity located in the forum state can support an exercise of jurisdiction on patent claims for declaratory relief. *See Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375 (Fed. Cir. 2022). Every denies that it has accused Onego of infringement, threatened a suit for infringement, or otherwise taken any other affirmative act suggesting it might sue Onego. But

the court need not resolve that dispute because Onego does not identify any threatening conduct that was targeted at a Wisconsin resident. Onego does not allege that it has had any meetings with Every in Wisconsin or that Onego has received any communications from Every in Wisconsin, about alleged infringement or anything else.

The only Wisconsin connection that Onego alleges it has is that it has purchased property in Wisconsin and is planning to build a manufacturing facility in the state. *Id.*, ¶¶ 26–28. Onego does not allege that it currently manufactures any potentially accused products in Wisconsin, but even if the court assumes that infringement allegations could cause harm to Onego in Wisconsin, it is Every's contacts with Wisconsin that are important, not Onego's. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("The mere fact that defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.") (internal quotation marks and alterations omitted). A plaintiff's harm in the forum state can be relevant to the personal jurisdiction analysis if that harm is related to the *defendant's* activities in the state. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 370–71 (2021). But Onego has not identified any such activities in this case. Nor does Onego allege that it has had any contact with Every while in Wisconsin. So regardless of whether it is reasonable to interpret any of Every's actions or statements as threats to sue for infringement, those actions and statements were not directed at Wisconsin, so they do not provide a basis for exercising jurisdiction in this state.

As for Every's sales, Onego makes two arguments. First, Onego says that Every "has directed its products and business activities to Wisconsin through its websites (www.everyegg.com and www.every.com)." Dkt. 7, ¶ 11. Second, Onego cites several websites

6

that it says show that "Every's products" are sold in Wisconsin by third-party stores and online retailers. Dkt. 33, at 13.[2]

Every challenges Onego's characterizations of the cited websites, and the court will discuss that dispute more in the context of Onego's false-advertising claim. But the dispute is not important in the context of Onego's claims for declaratory relief. Even if the court assumes that Every sells its products to Wisconsin customers, Onego does not explain why that matters for Onego's patent claims. Shipping accused products to the forum state can support an exercise of jurisdiction over an accused infringer, *see Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350–51 (Fed. Cir. 2016), but Every is not an accused infringer in this case. In a claim for declaratory relief like this one, Onego must point to "activities that relate to the enforcement or the defense of the validity of the relevant patents." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334–35 (Fed. Cir. 2008). Sales of Every's own products in Wisconsin have nothing to do with the enforcement or defense of the '784 patent. Onego does not allege that any products being sold in Wisconsin are embodiments of the '784 patent, but even if they are, Onego does not allege that those products help to prove or disprove infringement or invalidity. *See Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1381 (Fed. Cir. 1998) ("[A] court may not predicate an infringement determination on a comparison of an accused product with a patentee's commercial embodiment of his claimed invention.").

This is not like a case like *Ford Motor*, 592 U.S. at 361, in which the plaintiffs alleged that they had been harmed by a product that the defendant regularly sold in the forum state. Onego's patent claims are simply not about Every's products.

---

[2] Citations to documents filed on the docket reflect the page numbers as they appear on the headers in the court's electronic case file, not the page numbers on the documents themselves.

This leaves Onego's allegations about lobbying. The amended complaint includes the following allegation:

> Every has also directed lobbying efforts to Wisconsin's U.S. Senators, including a July 21, 2025 joint letter with Onego to Senators Johnson and Baldwin seeking support for biotechnology manufacturing in Wisconsin. This letter asked for "continued support of biotechnology and advanced manufacturing in Wisconsin" and to "Please help EVERY and Onego succeed in its goal to deliver manufacturing capacity in the United States and in Wisconsin as planned."

Dkt. 7, ¶ 12. The letter Onego cites asks the senators to support the Distributed Bioindustrial Manufacturing Program (DBIMP) of the U.S. Department of Defense under which both Onego and Every had been awarded funds to build manufacturing facilities. Dkt. 21-5.

A letter to Wisconsin senators may qualify as a contact with Wisconsin, but the letter does not provide a basis for exercising jurisdiction over Onego's patent claims. The letter does not mention the '784 patent specifically or Every's intellectual property more generally, so it does not relate to those claims.

Onego points out that the letter refers to "Forward" as "our" state motto, but Onego does not explain why that matters. Onego's contention seems to be that Every is representing that it has close connections with Wisconsin. But a characterization in a letter is not a contact. Again, Onego does not allege that Every is located in Wisconsin or has any offices here. Use of a first-person possessive adjective does not change that.

In its sur-reply brief, Onego contends that Every "has consented to litigation in Wisconsin" because both parties are conducting discovery in this case. Dkt. 64-1. But a party does not waive a personal jurisdiction defense simply because it engages in discovery. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The important question is whether the defendant has communicated through

8

its actions that it will defend the suit on the merits. *See H D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 847–48 (7th Cir. 2012).

In this case, Every promptly raised its personal jurisdiction defense in a motion to dismiss filed less than a month after Onego filed its amended complaint and months before any discovery. Every later moved to compel discovery only after the court denied its request to stay the case pending a decision on the motion to dismiss, Dkt. 35, and after Onego filed its own motion to compel discovery, Dkt. 77. It is not reasonable to infer waiver under those circumstances, and Onego cites no authority to the contrary.

The only remaining question for the patent claims is whether the court should allow Onego to conduct jurisdictional discovery related to those claims. The answer is no. Jurisdictional discovery is appropriate only when the plaintiff "establishes a colorable or prima facie showing of personal jurisdiction." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024).[3] Onego has not done that. This is not a situation in which the facts are unclear because the plaintiff does not have access to relevant information. The problem is that the activities Onego is relying on to establish personal jurisdiction over the patent claims are either unrelated to Wisconsin or unrelated to the patent claims. Onego does not even hint at other possible contacts that Every might have with Wisconsin that would support an exercise of jurisdiction over those claims.

In some cases, a court may consider whether to transfer a case to a district court that can exercise jurisdiction rather than dismiss the case. *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). That is unnecessary here because Onego has already filed the same lawsuit against

---

[3] Both sides assume that Seventh Circuit law governs the discovery issue, so the court has done the same.

Every in Delaware. *See Onego Bio, Inc. v. Clara Foods Co.*, No. 25-cv-01131-JDW (D. Del., filed Sept. 10, 2025). Every is incorporated in Delaware, which means that Delaware courts can exercise personal jurisdiction over Every on any claim, regardless of whether Every has Delaware contacts related to the claim. *See Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015). So the court will dismiss Onego's patent claims for lack of personal jurisdiction.

### 2.  False advertising

Onego alleges that Every has made the following false statements about Every's "egg protein products" in press releases and in presentations:

- "Instead of chickens, we use precision fermentation to create real animal protein that is equivalent to the key protein found in a hen's egg."

- "EVERY Protein: a highly soluble, 'near-invisible' protein bio-identical to a glycoprotein (ovomucoid) found in egg white, enabling 'new-to-the-world, protein-boosted beverages and food products with a neutral sensory profile and optical clarity.'"

- "Led by Co-Founder and Chief Executive Officer Arturo Elizondo, EVERY uses precision fermentation to brew nature-equivalent animal proteins that taste and function like the originals."

- "Ours are exactly identical to those . . . [natural] proteins."

Dkt. 7, ¶ 50. Onego focuses on the words "equivalent," "bio-identical," and "nature-equivalent" in those statements, contending that they are false or misleading because Every's products are "genetically modified and have up to 13 extra amino acids, which have been artificially altered through genetic engineering." *Id.*, ¶ 51. In its brief, Onego adds that that the statements are false or misleading because "Every's genetically modified products . . . contain amino acids from both egg and yeast proteins." Dkt. 33, at 26.

Onego does not allege that Every made any of the above statements in Wisconsin or directed them to an audience in Wisconsin. Instead, Onego says that an exercise of personal jurisdiction is supported by the same three types of alleged contacts previously discussed: implicit threats to sue Onego, product sales, and lobbying efforts. Reliance on any litigation threats and lobbying fails for the same reasons that it failed for the patents claims: the litigation threats were not directed at Wisconsin, and the lobbying has nothing to do with the claim at issue.

This leaves Onego's allegations that Every is selling falsely advertised products in Wisconsin. To support that allegation, Onego relies on websites that fall into three categories: (1) Every's own websites; (2) websites of third-party companies; and (3) an internet news article.

Every's own websites are not helpful because Every denies that purchases can be made from its websites, and Onego does not allege otherwise. A website does not create a contact with a state for the purpose of exercising personal jurisdiction simply because the website is accessible in the state. *Curry*, 949 F.3d at 400. Onego does not cite any other evidence that Every is making direct sales to Wisconsin companies or consumers.

As for the websites of the online retailers, Onego alleges that products containing Every's protein can be purchased from those sites and shipped to Wisconsin. A threshold problem with this allegation is that Onego does not cite evidence or even allege that third-party retailers did in fact make sales to Wisconsin residents and ship Every's protein there or that Every knew that third parties were selling or marketing its products in Wisconsin. The possibility of sales, or sales occurring without the defendant's knowledge are not enough. *See*

11

*Liu v. Monthly*, 170 F.4th 1090, 1093 (7th Cir. 2026); *B.D. by & through Myers v. Samsung Sdi Co.*, 143 F.4th 757, 767 (7th Cir. 2025).

But there is a more fundamental question about whether sales on these websites could establish personal jurisdiction over Every. Neither party cites cases discussing the circumstances under which forum-state sales can establish personal jurisdiction in the context of a false-advertising claim, but the court of appeals has considered personal jurisdiction in the somewhat related context of trademark infringement, and those cases are instructive.

In *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022), and *Curry*, 949 F.3d at 401, the court held that direct sales of an infringing product in the forum state can be sufficient. But in *Advanced Tactical*, different facts led to a different result. The claim was that the defendant violated trademark law by falsely implying that it was affiliated with the plaintiff and that the plaintiff was selling the defendant's product. 751 F.3d at 799. Among other things, the plaintiff relied on the defendant's sales of the product in the forum state to show personal jurisdiction. The court rejected this argument because the plaintiff had not "link[ed] the few sales to [the defendant's] litigation-specific activity [or] to the allegedly tortious activity." *Id.* at 801. Specifically, the plaintiff did not cite evidence that forum-state residents "saw [the defendant's] post before making their purchases" or "thought that the plaintiff had started selling" the defendant's products. *Id.*

Onego's allegations more closely resemble *Advanced Tactical* than *Curry* and *NBA Properties*. As in *Advanced Tactical*, the alleged violations of the law are alleged false or misleading statements about a product rather than the sale of the product itself. And like the plaintiff in *Advanced Tactical*, Onego does not allege that any Wisconsin consumer who purchased a third-party's product containing Every's product was aware of any of the alleged false or

12

misleading statements or was otherwise confused. Importantly, Onego does not allege that the third-party retailer websites contain any false or misleading statements about Every's protein. So any potential sales on the third-party websites are not enough.

The online news article also comes up short. The article comes from a website called "Green Queen." Onego provides no information about the website, but it refers to itself as the "world's leading food and climate media."[4] The article is dated November 4, 2025, and states that Every's "egg protein is now featured in a product at all Walmart stores across the US."[5] Of course, the article is inadmissible hearsay. But even if the article were admissible, its probative value is undermined because it does not cite a source for the statement or identify the product at issue. Onego cites no evidence that Every's egg protein was, in fact, included in products sold at Walmart stores in Wisconsin or shipped to Wisconsin customers at the time Onego filed this lawsuit. *See Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.,* 440 F.3d 870, 877–78 (7th Cir. 2006) (existence of personal jurisdiction determined at time of filing).

More fundamentally, the article suggests that any products being sold at Walmart do not disclose any affiliation with Every. The article states that "the products [Every's customers] use its ingredients in are kept confidential." *Id.* This creates another problem under *Advanced Tactical*. Onego cannot show that a Wisconsin consumer's purchase of a product is related to Onego's false-advertising if the consumer does not even know that it is purchasing an Every product.

---

[4] https://www.greenqueen.com.hk/about-gq/.

[5] https://www.greenqueen.com.hk/the-every-company-precision-fermentation-egg-protein-funding-walmart/.

That being said, at this stage of the case, Onego does not have to prove Every's contacts by a preponderance of the evidence. The question is whether Onego has made a strong enough showing to earn the right to conduct jurisdictional discovery. Onego has not met that standard. It is possible that additional discovery could prove that Wisconsin consumers are purchasing products that include Every protein in them. But Onego has not made even a prima facie showing that those purchases are related to any false advertising by Every.

Even if the court assumed that Onego had met that standard to permit jurisdictional discovery, it would be a waste of time and resources to authorize discovery in this case. As already discussed, Onego is proceeding on the same claims against Every in Delaware, where personal jurisdiction is not an issue. "[A] district court has significant latitude and broad discretion to dismiss a complaint for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court." *Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. 2021) (internal quotation marks and alterations omitted). In light of the substantial questions about personal jurisdiction in this case, even if Onego had made a prima facie showing, it would make sense to sense to dismiss this case and allow the claims to proceed in a forum where personal jurisdiction is established rather than risk additional wasted resources in the event that Onego could not prove jurisdiction down the road.

## ORDER

IT IS ORDERED that:

1.  Onego Bio, Inc.'s motion for leave to file a sur-reply brief, Dkt. 64, is GRANTED, and Clara Foods Co.'s motion to strike the sur-reply brief, Dkt. 68, is DENIED.

2.  Clara Foods's motion to unseal, Dkt. 69, is DENIED as moot.

14

3.  Clara Foods's motion to dismiss, Dkt. 16, is GRANTED, and this case is DISMISSED for lack of personal jurisdiction.

4.  The clerk of court is directed to enter judgment accordingly and close this case.

Entered May 5, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge